IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VERANIO S. TONGSON, JEFFREY JAVIER,  KIM S. NEMOTO, | ) ) ) ) | Civ. No. 05-00683 BMK |
| Plaintiffs, | ) ) ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS |
| vs. | ) ) | |
| COUNTY OF MAUI, DEPARTMENT OF HOUSING AND HUMAN CONCERNS; DIRECTOR ALICE LEE, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; PROGRAM SPECIALIST WENDY STEBBINS, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; JOHN DOES 1-20; DOE ENTITIES 1-20, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON ALL REMAINING CLAIMS

On April 4, 2006, Plaintiffs Veranio S. Tongson ("Tongson"), Kim S.

Nemoto ("Nemoto"), and Jeffrey Javier ("Javier") filed their First Amended

Complaint ("FAC") against Defendants County of Maui Department of Housing

and Human Concerns ("the County"), Alice Lee ("Lee"), and Wendy Stebbins

("Stebbins").  The Court awarded Defendants summary judgment on a number of

their claims in orders filed on December 15, 2006 ("Partial SJ Order") and January

26, 2007.

Now before the Court is Defendants' motion for summary judgment

on all remaining claims.  This motion was heard on August 3, 2007.  After careful

consideration of the motion, the supporting and opposing memoranda, and

arguments of counsel, the Court hereby orders that Defendants' motion be

GRANTED.

<u>FACTUAL BACKGROUND</u>

Plaintiff Tongson is a County employee who transferred to the Grants

Management Division of the County's Department of Housing and Human

Concerns in 2000.  Tongson claims that in late 2002, he became aware of "fraud,

conspiracy, corruption, and theft by Defendants."  (Tongson Decl., 11/9/2006,

¶ 11.)  He claims that in 2004, he reported these matters to various County officials

and that as a result, County officials retaliated against him.  In particular, Tongson

claims that Stebbins excluded him from a meeting and the related decision making

"involving the Grants Management Division on the New Age Workshop,

Substance Abuse Strategy and presentation of needs Assessment to the County

Council" in February, 2004.  (Tongson Decl., 11/9/2006, ¶ 11.)

Tongson was Stebbins' supervisor until March 15, 2004.  In August of 2004, Stebbins filed a sexual harassment complaint against Tongson.  Tongson was placed on paid administrative leave while the complaint was investigated.  The investigators determined that Tongson had sexually harassed Stebbins, and Tongson was suspended for five days without pay.  Tongson claims that Lee's actions and statements to him in the wake of the sexual harassment complaint were outrageous and intentional.

Plaintiff Nemoto is a County employee who works in the County's Section 8 housing voucher program.  Nemoto claims that beginning in April, 2003, she reported a number of the County's acts of mismanagement of the program.[1] Nemoto claims that in response to these statements, Defendants retaliated against her by: (1) falsely accusing her of taking unauthorized leave; (2) asking her to "stop audio recording the staff meetings"; (3) suggesting that she transfer to another division; and (4) "subjecting her to dangerous workplace [conditions]." (FAC ¶ 45; Ex. M, 35-43).

---

[1]In particular, Nemoto says she reported that: (1) "Housing Specialists needed [the County's] Administrative Plan which details the law, rules, regulations, etc."; (2) thirty-five Housing Inspection reports "contained overdue failed items"; (3) the County "did not have a written policy on whose responsibility it was to a) telephone the landlord or tenant about the status of the repairs for failed inspections, or b) to schedule the re-inspection follow-up"; (4) the County's "overpayments to landlords must be refunded"; and (5) "Tenant case files were not being secured and the Tenant information protected."  (FAC ¶ 44.)

Plaintiff Javier is a Housing Inspector for the County.  Javier alleges that, beginning in 2004, he reported that (1) "the 3 housing Inspectors did not have sufficient 'training' to perform the Section 8 rental inspections"; (2) "the 3 housing Inspectors did not have sufficient 'written guidelines' to perform the Section 8 rental inspections"; (3) the inspectors "were unable to properly and completely inspect 8 houses on the island of Molokai in one day"; and (4) "the supervisors were passing his 'failed' inspections, without conducting reinspections, and just signing off on them."  (FAC ¶ 34.)

Javier claims that as a result of what he said, the County retaliated against him by (1) denying him pay for the time spent traveling for work; (2) accusing him of submitting untimely inspection reports; (3) falsely accusing him of arriving for an inspection early; (4) assigning him the responsibilities of other employees; and (5) threatening him.  (FAC ¶ 35.)

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving

4

party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also

Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir.

2000).

      In deciding a motion for summary judgment, the court's function is

not to try issues of fact, but rather, it is only to determine whether there are issues

to be tried.  Anderson, 477 U.S. at 249.  If there is any evidence in the record from

which a reasonable inference could be drawn in favor of the non-moving party on a

material issue of fact, summary judgment is improper.  See T.W. Elec. Serv., Inc.

v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) (summary

judgment must be denied if a rational trier of fact might resolve the issue in favor

of the non-moving party).  However, this evidence must be brought to the attention

of the court; the court "is not required to comb the record to find some reason to

deny a motion for summary judgment."  Forsberg v. Pac. Northwest Bell

Telephone Co., 840 F.2d 1409, 1418 (9th Cir. 1988).

DISCUSSION

      Defendants have moved for summary judgment on all remaining

claims against them, namely: (1) Tongson and Nemoto's First Amendment

retaliation claims against the County for retaliatory acts occurring between October

27, 2003, and May 12, 2004; (2) Nemoto's First Amendment retaliation claim

5

against Lee, in her official capacity, for retaliatory acts occurring between October 27, 2003, and May 12, 2004; (3) Tongson and Nemoto's Hawaii Whistleblower Protection Act ("HWPA") retaliation claims against the County for retaliatory acts occurring between October 27, 2003, and May 12, 2004; (4) Nemoto's HWPA retaliation claim against Lee, in her official capacity for retaliatory acts occurring between October 27, 2003, and May 12, 2004; (5) Tongson's intentional infliction of emotional distress ("IIED") claim against Lee, in her individual capacity; (6) Tongson's IIED claim against Stebbins, in her individual capacity; (7) Nemoto's IIED claim against Lee, in her individual capacity; (8) Javier's IIED claim against Lee, in her individual capacity; and, (9) Tongson's breach of implied contract claim against the County.

I.  RETALIATION

   A.  First Amendment Retaliation Claims Brought Under § 1983

   Tongson and Nemoto have alleged that the County and Lee retaliated against them in violation of their First Amendment right to free speech.  This claim is brought pursuant to 42 U.S.C. § 1983, which provides a federal cause of action for "the deprivation of any rights privileges or immunities secured by the Constitution" by persons acting under the color of state law.  42 U.S.C. § 1983.

6

To prove retaliation under the First Amendment, an employee must show "(1) that he or she engaged in protected speech; (2) that the employer took an 'adverse employment action,' and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003).  Speech is considered "protected" by the First Amendment only where it "addresses 'a matter of legitimate public concern.'" Id. Speech by public employees is not protected, however, when they "make statements pursuant to their official duties."  Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006).  An "adverse employment action" is an action that is "reasonably likely to deter [someone] from engaging in protected activity under the First Amendment." Coszalter, 320 F.3d at 976.

1.  Tongson

Defendants seek summary judgment against Tongson on his only remaining First Amendment retaliation claim, which is against the County for retaliatory acts that occurred prior to May 12, 2004.  The only remaining retaliatory act alleged during this time period is Stebbins' exclusion of Tongson from the February, 2004 meeting and decision making.  Defendants do not dispute that Tongson's statements to County officials (regarding the alleged fraud, conspiracy, corruption, and theft) constituted protected speech.  Rather, they argue

7

that Stebbins' alleged exclusions of Tongson cannot be construed as an adverse

employment action.  Specifically, Defendants argue that this action was not

reasonably likely to deter Tongson from engaging in protected speech because

Tongson was Stebbins' supervisor at the time of this action.  Defendants claim that

the alleged exclusion of Tongson from the meeting could not be an adverse

employment action because "[i]f Tongson believed actions by Stebbins were

inappropriate, he was in the position of power and could have disciplined

Stebbins." (Defs.' Mem. Supp. 16.)

        In response to this argument, Plaintiffs refer the Court to the

arguments they made in opposing Defendants' previous motion for summary

judgment.  Unfortunately, Defendants' previous motion for summary judgment

asserted a different set of arguments, namely, that Stebbins' actions were not

adverse because they did not actually chill Tongson's speech.[2]  Neither Plaintiffs

nor the Court have previously addressed the issue that Defendants now raise,

---

[2]The Court rejected this argument both as a matter of law (finding that an adverse action need not actually chill a person's speech, just that it would chill the speech of a person of ordinary firmness) and as a disputed fact (recognizing that Tongson did aver that his speech had been chilled by Stebbins' actions).  (Partial SJ Order 28.)

8

which is whether it is legally possible for the actions of a subordinate, by themselves, to constitute an adverse employment action.[3]

The Court declines to address whether a subordinate's lone actions may ever constitute an adverse employment action, but finds that on the present facts, no reasonable jury could find that Stebbins' exclusion of Tongson constituted an adverse employment action.  As Defendants recognize, Tongson had the power to discipline Stebbins for any inappropriate or adverse actions she took.  Summary judgment is therefore GRANTED in favor of the Defendants on Tongson's First Amendment retaliation claims for the period between October 27, 2003 and May 12, 2004.

2.  Nemoto

Defendants also seek summary judgment on Nemoto's two remaining First Amendment retaliation claims, against the County and against Lee, for any retaliatory acts that occurred prior to May 12, 2004.  Defendants first argue that there can be no First Amendment retaliation against Nemoto prior to May 12, 2004 because Nemoto did not engage in any protected speech prior to May 12, 2004.

---

[3]The Ninth Circuit recently held that where a subordinate, "in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer . . . ."  Poland v. Chertoff, — F.3d —, 2007 WL 2069651, at *6 (9th Cir. 2007).  This case does not address the present situation, however, where the subordinate's actions are alleged to have themselves been an adverse employment action.

Nemoto points to only four instances of allegedly protected speech prior to May 12, 2004: (1) her "repeated requests for a current copy of the Housing Division's Administrative Plan"; (2) her compilation of "35 failed inspection reports with repairs overdue" that she gave to Milton Ito, Joy Helle and Ethel Yogi; (3) her meeting on September 17, 2003 with Milton Ito and Joy Helle; and (4) her meeting on October 8, 2003 with Milton Ito and Joy Helle "in regards to concerns regarding audit findings." (Defs.' Mem. Supp., Ex. M.)

Defendants contend that none of these four instances of speech are protected by the First Amendment because they were made "pursuant to [her] official duties." Garcetti, 126 S. Ct. at 1960. The Court has already determined that Nemoto's job duties included "'review[ing] documents prepared by the other Housing Specialists, clerks and, and inspectors to identify what is incomplete, missing, or in error' and 'identif[ying] other errors in the administration of the program.'" (Partial SJ Order 59.) Defendants contend that these four instances of speech all pertain to her official duties.

Plaintiffs oppose Defendants' arguments here by referring the Court to their memorandum in opposition to Defendants' previous motion for summary judgment, and by arguing that "Defendants offer no new evidence in their third

attempt to dismiss these claims, and instead repeat their original arguments that

failed to convince Judge Mollway to dismiss these claims." (Pls.' Mem. Opp. 8.)

The Court previously ruled that there was "at least a question of fact

as to whether some of Nemoto's and Javier's statements are protected by the First

Amendment." (Partial SJ Order 61.)  However, because there were at least 36

instances of allegedly protected speech before the Court at that time (see Pls.'

Response to Concise Statement ("Pls.' CS"), Ex. F, Nemoto Decl.  ¶ 44 and Javier

Decl. ¶ 4), the Court did not specifically address which of these 36 instances of

speech involved questions of fact, and which were related to official job duties.

With only four instances of speech before it, this task is now much easier.

The Court finds that all four instances of speech that took place prior

to May 12, 2004 were made pursuant to Nemoto's official duties, and are therefore

not protected speech.  First, the reason Nemoto requested an Administrative Plan

was because it "detail[ed] the law, rules, regulations, etc. regarding the Section 8

Housing Inspections that were being conducting [sic] without knowing the time

limits, types of inspections, what constitutes an 'emergency' inspection, and

others." (Pls.' CS, Ex. F, Nemoto Decl. ¶ 44.)  The fact that the Housing

Inspectors did not have this document was precisely the sort of "error in the

administration of the program" (Partial SJ Order 59) that Nemoto was hired to

identify and remedy.  Similarly, Nemoto's identification of overdue failed items on

inspection reports is also an identification of program administration errors.

Finally, Nemoto's discussion of her audit findings with Milton Ito and Joy Helle

on September 17 and October 8, 2003 also appears to have been a function of her

official duties.  Nemoto provides no evidence to the contrary.  Therefore, the Court

finds that Nemoto did not engage in protected speech prior to May 12, 2004.

Defendants are hereby GRANTED summary judgment on Nemoto's First

Amendment retaliation claims with respect to any allegedly retaliatory acts that

occurred prior to May 12, 2004.

### B.  HWPA Retaliation Claims

In addition to claiming retaliation under the First Amendment,

Tongson and Nemoto have asserted retaliation claims under the HWPA.  The

HWPA prohibits retaliation against employees who report a violation of any law,

rule, ordinance, or regulation by their employers.[4]  To prove retaliation under the

---

[4]Haw. Rev. Stat. § 378-62 provides, in part:

An employer shall not discharge, threaten, or otherwise discriminate against an
employee regarding the employee's compensation, terms, conditions, location, or
privileges of employment because:

(1) The employee . . . reports or is about to report to the employer, or reports or is
about to report to a public body, verbally or in writing, a violation or suspected
violation of:

(A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a

HWPA, an employee must show that the employer's action was "taken 'because' the employee engaged in protected conduct." <u>Crosby v. State of Hawaii Dep't of Budget & Finance</u>, 76 Haw. 332, 341 (1994).

In their previous motions for summary judgment, Defendants asserted that they could not have violated the HWPA because Tongson and Nemoto's speech did not touch on matters regarding a violation of law.  The Court rejected this argument, stating that it was "unpersuaded that there is no question of fact as to whether Tongson's purpose in reporting the alleged violations was to expose Defendants' illegalities," and similarly, that "Defendants do not meet their burden of showing the absence of a genuine dispute of fact regarding Nemoto's . . . purpose in making [her] reports." (Partial SJ Order 65.)  The Court did, however, limit Plaintiffs' HWPA claims to those acts of retaliation that occurred between October 27, 2003 and May 12, 2004.

Defendants once again move for summary judgment as to Tongson and Nemoto's  HWPA claims against them.  Now, however, they advance the argument that the allegedly retaliatory acts of the Defendants were not adverse acts because they did not "discharge, threaten, or otherwise discriminate against either Tongson or Nemoto regarding their 'compensation, terms, conditions, location, or

political subdivision of this State, or the United States.

privileges of employment.'" <u>See</u> Haw. Rev. Stat. § 378-62.  Plaintiffs offer no specific opposition to these new arguments, but merely point the Court toward their opposition to Defendants' previous summary judgment motions and to the declarations of Nemoto and Tongson.

     1. <u>Tongson</u>

     The only retaliatory act that Tongson asserts under the HWPA for the relevant time period, just as for his First Amendment retaliation claims, is Stebbins' exclusion of him from the February 2004 meetings and decisionmaking. Just as a reasonable jury could not construe Stebbins' actions as being adverse to Tongson under the First Amendment, a reasonable jury also could not possibly construe Stebbins' actions as"discharg[ing], threaten[ing], or otherwise discriminat[ing] against" Tongson regarding his "compensation, terms, conditions, location, or privileges of employment."  <u>See</u> <u>id.</u>  Because Tongson was Stebbins' supervisor during the exclusion, Stebbins' actions could not, by themselves, have negatively affected Tongson's employment situation.  Defendants are GRANTED summary judgment on Tongson's HWPA claim for any allegedly retaliatory acts occurring between October 27, 2003 and May 12, 2004.

2. <u>Nemoto</u>

For the relevant time period, Nemoto alleges three retaliatory acts by the County and Lee as a basis for her HWPA claim.[5]  First, Nemoto claims that she "ask[ed] that [her] work areas be relocated," but that this request was denied. (Defs.' Concise Statement of Material Facts ("Defs.' CS"), Ex. M at 22.)  Second, Nemoto alleges that she was "called into Edwin Okubo's office" for a meeting "regarding complaints from staff that me and Jill were not carrying our fair share of the workload." (Defs.' CS, Ex. M at 22.)  Third, Nemoto asserts there was a delay in receiving a partition for her work area. (Defs.' CS, Ex. M at 22-23.)  The Court finds that, even viewed in the light most favorable to Nemoto, no reasonable jury could find that these acts "discharg[ed], threaten[ed], or otherwise discriminat[ed] against" Nemoto regarding her "compensation, terms, conditions, location, or privileges of employment." <u>See</u> Haw. Rev. Stat. § 378-62.

First, the Court has already ruled that Defendants have established a legitimate reason for failing to grant Nemoto's request to relocate her work area. (<u>See</u> Partial SJ Order 62-63.)  As before, Plaintiffs have failed to produce any facts that could contradict this legitimate reason.  Therefore, as the Court previously

---

[5]These three acts are drawn from Nemoto's response to Defendants' first request for answers to interrogatories. (<u>See</u> Defs.' Concise Statement, Ex. M, at 22-23.)  Plaintiffs themselves do not, in their opposition memo, point to *any* acts of possible retaliation by the County.

determined in the context of Nemoto's First Amendment retaliation claims, the County's failure to relocate her work area was not an act of retaliation.

Second, Nemoto's being called into a meeting to discuss her co-workers' complaints is not something that affects her "compensation, terms, conditions, location, or privileges of employment."  Haw. Rev. Stat. § 378-62. Nemoto does not allege that the County ratified these colleagues' complaints; merely discussing the concerns of others is a normal part of every employment situation and cannot be deemed a retaliatory act.

Third, Defendants have also put forward a legitimate reason for the delay in partitioning Nemoto's workspace, namely, that the partitions that were received had to be returned and reordered.  (See Defs.' CS, Ex. F, at 180:2-7.) Nemoto has not produced any facts that contradict Defendants' legitimate reason for the delay.  Accordingly, the Court deems that no reasonable jury could find that the delay in partitioning Nemoto's workspace constituted a retaliatory act under the HWPA.  Defendants request for summary judgment on Nemoto's HWPA claims against Lee and the County for the time period between October 27, 2003 and May 12, 2004, is hereby GRANTED.

## II.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants also seek summary judgment on the four remaining claims for intentional infliction of emotional distress, namely, Tongson's claims against Lee and Stebbins, Nemoto's claim against Lee, and Javier's claim against Lee.  In Hawaii, the tort of intentional infliction of emotional distress requires an act (1) that was intentional or reckless, (2) that was "outrageous," (3) that caused (4) "extreme emotional distress to another."  Hac v. Univ. of Hawaii, 73 P.3d 46, 60-61 (2003).

Under Hawaii law however, "a plaintiff's claims of emotional distress precipitated by circumstances of his employment are barred by the exclusivity provision of the workers' compensation statute." Morishige v. Spencecliff Corp., 720 F. Supp. 829, 836 (D. Haw. 1989) (internal brackets omitted) (quoting Howard v. Daiichiya-Love's Bakery, Inc., 714 F. Supp. 1108, 1113 (D. Haw. 1989)).  The alleged actions of a co-worker are considered to be "precipitated by the circumstances of [] employment," and are therefore barred, where the co-worker's actions do not constitute "wilful and wanton misconduct."  See Haw. Rev. Stat. § 368-8.

17

A.  <u>Tongson's Claim Against Lee</u>

Tonsgon first alleges the intentional infliction of emotional distress by Lee for a variety of Lee's statements and actions relating to the sexual harassment complaint filed against Tongson.  In addition to asserting a defenses to this claim's merits, Lee contends that she is entitled to qualified immunity under Hawaii state law because Plaintiffs have failed to introduce any evidence showing that she acted with malice.  The Court agrees.

In Hawaii, public officials may only be liable for the injuries they cause in the course of their official duties if they are "motivated by malice, and not by an otherwise proper purpose."  <u>Medeiros v. Kondo</u>, 55 Haw. 499, 503 (1974). "The existence or absence of malice is generally a question for the jury." <u>Runnels v. Okamoto</u>, 56 Haw. 1, 4 (1974).  However, when the record does not show any suggestion of malice, qualified immunity may be granted at the summary judgment stage.  <u>See</u> <u>Towse v. State of Hawaii</u>, 64 Haw. 624, 633 (1982); <u>Edenfield v. Estate of Willets</u>, 2006 WL 1041724, at *12 (D. Haw. Apr. 14, 2006) (holding that "when the existence or absence of malice is demonstrated to the court via uncontroverted affidavits or depositions, the court may rule on the existence or absence of malice as a matter of law").

Here, Lee has declared in an affidavit that "[a]ll of the actions which I have taken involving Mr. Tongson were done in order to properly manage the Department . . . ."  (Defs.' CS, Ex. O, at 4.)  Tongson points to no affidavit or other evidence which contradicts Lee's statement.  Tongson has therefore not met his burden of showing a genuine issue of material fact regarding Lee's malice, and Defendants' request for summary judgment as to Tongon's intentional infliction of emotional distress claims against Lee is hereby GRANTED.

B.  Tongson's Claim Against Stebbins

Defendants also seek summary judgment on Tongson's claim that certain actions by Stebbins intentionally caused him emotional distress with her June 24, 2004 statement to him that he should "transfer to the Housing Division or I will accuse you of sexual harassment" and Stebbins' subsequent sexual harassment accusation on August 24, 2004.  (See Defs.' CS, Ex. AA at 13, ¶¶ h-i.) Defendants claim that this statement cannot be outrageous because the Court already ruled, in the context of Tongson's defamation claim, that there was "no genuine dispute as to the truthfulness of the allegations Stebbins made in her sexual harassment complaint." (Partial SJ Order 51.)  Defendants contend that if there is no dispute that Tongson sexually harassed Stebbins, then Stebbins' threat

to accuse Tongson of sexual harassment, and her subsequent accusation, cannot be deemed outrageous.

The Court agrees that Stebbins' accusation of Tongson cannot itself be outrageous, given that the Court has found no dispute that the sexual harassment actually occurred.  This was a legal right that she properly exercised; there is nothing that could be considered outrageous about such conduct.  In addition, the Court finds that Stebbins' threat to report Tongson if he did not transfer is also incapable of being deemed outrageous, even when construed in a light most favorable to Tongson.  Cf. In re Triple S Restaurants, Inc., 342 B.R. 508, 512-13 (Bkrtcy. W.D. Ky 2006) (holding that a bankruptcy trustee's threat to report a person for criminal prosecution unless the person promptly paid the judgment against him was not sufficient to support a claim for the intentional infliction of emotional distress under Kentucky law).  Accordingly, Defendants' requests for summary judgment on Tongson's intentional infliction of emotional distress claims against Stebbins is hereby GRANTED.

C.  Nemoto's Claim Against Lee

Defendants also seek summary judgment against Nemoto on Nemoto's claim that Lee intentionally caused her emotional distress.  The only allegedly outrageous act towards Nemoto is Lee's statement, "What do you

expect?  You're this young kid coming in and auditing their files," in response to

Nemoto's concern that she was being singled out by other employees.  (Defs.' CS,

Ex. M, at 5.)  Nemoto states that this made her feel "as if [she] had no support from

Alice and Herman."  (Defs.' CS, Ex. M, at 5.)  The Court finds that, even construed

in favor of Nemoto, no reasonable jury could find this statement by Lee to be

outrageous.  Similarly, Plaintiffs fail to produce any evidence that Lee's actions

constituted "wilful and wanton conduct" to avoid having this claim barred by the

Hawaii workers' compensation regime.  Summary judgment is therefore

GRANTED as to Nemoto' claim against Lee for the intentional infliction of

emotional distress.

###### D.  Javier's Claim Against Lee

Finally, Defendants also request summary judgment on Javier's

intentional infliction of emotional distress claim against Lee.  Defendants contend

that Javier has failed to allege any outrageous acts by Lee.  Javier's interrogatory

responses indicate that all facts in support of his claim for the intentional infliction

of emotional distress are set forth in the First Amended Complaint.  (Defs.' CS, Ex.

Z at 5.)  The First Amended Complaint does not describe any specific acts directed

towards Javier by Lee.  (Defs.' CS, Ex. AA at 32-34.)  Moreover, Javier admitted

in his response to Defendants' First Request For Admissions that "Director Lee has not taken any actions against Javier."  (Defs.' Reply, Ex. NN.)

In opposing this motion, Javier points to no specific acts by Lee that constitute outrageous conduct.  Rather, Javier merely relies on the fact that the Court "previously denied Defendants [sic] attempt to dismiss Plaintiff Javier's intentional infliction of emotional distress claim against Defendant LEE in her individual capacity."  (Pls.' Mem. Opp. 11.)  However, Defendants previously argued only that "Defendants' conduct, even if proven, is not conduct that would be considered 'atrocious' or 'outrageous.'" (Defs.' Mem. Supp. Mot. for Sum. J. Against Javier and Nemoto, filed Sep. 27, 2006, at 44.)  Based on this paucity of information, the Court found that it could not determine "that there is no question of fact as to whether . . . Lee's alleged actions were intentional and outrageous." (Partial SJ Order 67.)  In their previous motion for summary judgment, Defendants failed to meet their burden of pointing to an absence of disputed facts on which Javier might be able to prevail at trial.  They have now met that burden, and Javier has failed to offer a substantive response.  Accordingly, summary judgment is hereby GRANTED in favor of Defendants on Javier's remaining claim for intentional infliction of emotional distress.

22

## III. BREACH OF CONTRACT

Finally, Defendants seek summary judgment on Tongson's implied breach of contract claim against the County.  Tongson asserts that the County's Sexual Harassment Policy is an implied contract that it breached (1) by placing Tongson on administrative leave "before he was allowed to hear and respond to the false sexual harassment accusations"; (2) by failing to place Stebbins on administrative leave while investigating Tongson's sexual harassment counterclaim against Stebbins; (3) by failing to investigate Tongson's counterclaim; (4) by allowing Lee to investigate Stebbins' harassment complaint; (5) by failing to prepare a written report of findings within 10 working days; and (6) by imposing a 2 day suspension against him.[6] (FAC 21.)

In Hawaii, implied contracts can arise out of personnel policies and employee rules.  Kinoshita v. Canadian Pac. Airlines, Ltd., 68 Haw. 594, 602-03 (1986) (stating that "if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively

---

[6]The Court has distilled these six possible claims from the list in Plaintiffs' FAC, which contains undifferentiated allegations of gender discrimination and breach of implied contract.  In their opposition to Defendants' current motion, Plaintiffs do not clarify which of these allegations pertain to their breach of contract claim, and which pertained solely to their now defunct gender discrimination claim.

seek other employment, those promises are enforceable in the employment relationship") (emphasis removed).  However, an implied contract cannot arise based on personnel policies or rules where the employment is governed by an express collective bargaining agreement.  Bilan v. City and County of Honolulu, 2006 WL 3201874, at *12 (D. Haw. 2006) (finding that Kinoshita only "protected employees who did not have a formal agreement with their employer" and did not control where "there is no dispute that [the] [p]laintiff's employment was governed by an express CBA").

Here, as in Bilan, Tongson's employment arrangement was governed by an express collective bargaining agreement.  Tongson is represented by the Hawaii Government Employees' Association (HGEA), Unit 13, which has a collective bargaining agreement with the County.  Tongson's proper remedy was to file a grievance, which he did not do.  Thus, he cannot now seek relief under a theory of implied contact.  Defendants' motion for summary judgment is hereby GRANTED as to Tongson's breach of implied contract claim against the County.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment as to the Plaintiffs' remaining claims is hereby GRANTED.   In particular, summary judgment is granted as to: (1) Tongson and Nemoto's First Amendment

24

retaliation claims against the County for retaliatory acts occurring between October 27, 2003, and May 12, 2004; (2) Nemoto's First Amendment retaliation claim against Lee, in her official capacity, for retaliatory acts occurring between October 27, 2003, and May 12, 2004; (3) Tongson and Nemoto's HWPA claims against the County for retaliatory acts occurring between October 27, 2003, and May 12, 2004; (4) Nemoto's HWPA retaliation claim against Lee, in her official capacity, for retaliatory acts occurring between October 27, 2003, and May 12, 2004; (5) Tongson's IIED claim against Lee, in her individual capacity; (6) Tongson's IIED claim against Stebbins, in her individual capacity; (7) Nemoto's IIED claim against Lee, in her individual capacity; (8) Javier's IIED claim against Lee, in her individual capacity; and (9) Tongson's breach of implied contract claim against the County.

While this disposes of all claims that are currently before the Court, the Court notes that this case cannot yet be terminated. Plaintiffs' motion for reconsideration of the Court's previous order granting partial summary judgment is still pending. If the Court grants this order for reconsideration, several claims may be revived. Any action taken on the motion for reconsideration, however, will not affect the results of this order.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: August 15, 2007

Tongson v. County of Maui, Civ. No. 05-00683 BMK; ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS.